**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

SANDRA M. POWELL,                      :
   Plaintiff,                        :
                                  :
v.                                     : Civil No. 3:18CV1488 (AWT)
                                    :
ANDREW SAUL, COMMISSIONER OF           :
SOCIAL SECURITY,                       :
   Defendant.                        :

## ORDER AFFIRMING THE COMMISSIONER'S DECISION

Pursuant to 42 U.S.C. § 405(g) and 1383(c)(3), plaintiff Sandra Powell has appealed the Commissioner's August 29, 2017 final decision denying her Title XVI Supplemental Security Income application.

The plaintiff filed a motion to reverse or remand the Commissioner's decision, asserting that the Administrative Law Judge ("ALJ") failed "to provide a rationale as to whether Ms. Powell's conditions equal Listing 12.05"; failed to "sen[d] Ms. Powell for another consultative mental health examination with psychological testing and medical source statement as suggested by the Appeals Council Remand"; and failed to properly assess medical opinions. See Pl.'s Mem. (ECF No. 24-1) at 9 to 15.

The Commissioner countered with a motion to affirm the Commissioner's decision, contending that the ALJ properly evaluated Listing 12.05, properly assessed the medical record,

and properly supported the challenged findings with substantial evidence.  See Dft.'s Mem. (ECF No. 30-1) at 4 to 14.

For the reasons set forth below, the court finds that the Commissioner's final decision should be affirmed.  The ALJ supported the challenged findings with substantial evidence and there is no legally significant error.

## I.   <u>Legal Standard</u>

"A district court reviewing a final [] decision . . . [of the Commissioner of Social Security] pursuant to . . . the Social Security Act, 42 U.S.C. § 405(g), is performing an appellate function."  <u>Zambrana v. Califano</u>, 651 F.2d 842, 844 (2d Cir. 1981).  The court may not make a de novo determination of whether a plaintiff is disabled in reviewing a denial of disability benefits.  <u>See Wagner v. Sec'y of Health & Human Servs.</u>, 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the court's function is to ascertain whether the Commissioner applied the correct legal principles in reaching a conclusion and whether the decision is supported by substantial evidence.  <u>See Johnson v. Bowen</u>, 817 F.2d 983, 985 (2d Cir. 1987).  As the United States Supreme Court in <u>Biestek v. Berryhill</u> explained:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding.  <u>T-Mobile South, LLC v. Roswell</u>, 574 U.S. ----, ----, 135 S.Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-evidence standard, a court looks to an

> existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. <u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938) (emphasis deleted).

––– U.S. –––, 139 S.Ct. 1148, 1154 (2019). Therefore, absent legal error, this court may not set aside the decision of the Commissioner if it is supported by substantial evidence. <u>See Berry v. Schweiker</u>, 675 F.2d 464, 467 (2d Cir. 1982); 42 U.S.C. § 405(g)("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Further, if the Commissioner's decision is supported by substantial evidence, that decision will be sustained, even where there may also be substantial evidence to support the plaintiff's contrary position. <u>See Schauer v. Schweiker</u>, 675 F.2d 55, 57 (2d Cir. 1982).

## II.  <u>Discussion</u>

### A. The Appeals Council's Remand Order

The plaintiff challenges the ALJ's response to the Appeals Council's remand order to develop the record. Specifically, the plaintiff challenges the ALJ's consideration of Listing 12.05 and the ALJ's decision regarding the need for an updated consultative mental health examination with psychological testing and an updated medical source statement.

"When an unsuccessful claimant files a civil action on the ground of inadequate development of the record, the issue is whether the missing evidence is significant. . . . The plaintiff . . . must show that [s]he was harmed by the alleged inadequacy of the record: '[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination.'" Santiago v. Astrue, 2011 WL 4460206, at *2 (D. Conn. Sept. 27, 2011) (citing Pratts v. Chater, 94 F.3d 34, 37–38 (2d Cir. 1996) and Shinseki v. Sanders, 129 S. Ct. 1696, 1706 (2009)).

The relevant part of the order reads:

> The hearing decision finds that the claimant's severe impairments include[] borderline intellectual functioning (Finding 2). However, it is unclear from the record whether the claimant's intellectual functioning impairment meets or equals Listing 12.05. Consultative Examiner, Dr. Jeffrey S. Cohen, found the claimant to have a Full Scale IQ of 63, placing her in the "mild mental retardation" range of tested intelligence (Exhibit 6F, page 4). Dr. Cohen further opined that the claimant had impairments in analytic reasoning, verbal abstraction, limited cognitive abilities, and attention and concentration, noting that the claimant may have difficulty remaining employed and working for up to 8 hours a day at a time (Exhibit 6F, page 9). The Administrative Law Judge did not specifically address Listing 12.05C or weigh Dr. Cohen's opinion. Further **development as to the claimant's intellectual functioning is warranted, including evaluation of Dr. Cohen's opinion and consideration as to whether the claimant's impairments meet or equal** the severity of the impairment described in **Section 12.05**" (Exhibit 6A).

. . .

- **If warranted**, obtain additional evidence concerning the claimant's intellectual functioning impairment in order **to complete the administrative record in accordance with the regulatory standards** regarding consultative examinations and existing medical evidence (20 CFR 416.912-913). The additional **evidence may include, if warranted and available, a consultative mental health examination with psychological testing and medical source statements** about what the claimant can still do despite the impairment.

R. 240-41 (emphasis added).

### 1. *Listing 12.05*

The plaintiff asserts that the ALJ "failed to provide a rationale" for finding that the plaintiff's intellectual functioning did not meet Listing 12.05 and that it was "unclear as to upon which opinions the ALJ based her findings". Pl.'s Mem. at 9.

The relevant part of the ALJ's opinion reads:

The severity of the claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listing[] . . . 12.05 (Intellectual Disorder) . . . . In making this finding, the undersigned has considered whether the paragraph B criteria are satisfied. The paragraph B criteria refers to the degree of the claimant's ability to function independently, appropriately, effectively, and on a sustained basis in the four broad areas of functioning which are: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing themselves. The degree of limitation in the "B" criteria is rated on a five-point scale: "none," "mild," "moderate," "marked," and "extreme" (20 CFR 416.920a(c)(4)). To

satisfy the paragraph B criteria, the mental impairments must result in one extreme limitation or two marked limitations of the four areas of mental functioning. An extreme limitation is when one is unable to function independently, appropriately, and effectively, and on a sustained basis. A marked limitation is when one is seriously limited in the ability to function independently, appropriately, and effectively, and on a sustained basis.

**In understanding, remembering, or applying information, the claimant has moderate limitation.** *The record reflects that the claimant is able to follow instructions and carry out tasks, as evidenced by her ability to relate her medical history to medical providers throughout the record (Exhibit 1F-7F, 10F-13F and 15F-18F). She was noted to have a full understanding of medical treatment and instructions during routine treatment and during emergency room treatment (Exhibit 16F/17, 18, and 82; 11F/27 and 46). Notes show that she learned by reading and demonstration (Exhibit 13F and 15F). The claimant also manages her own medications and testified that she did not have any problems taking them (Testimony). She also independently raised eight children (Testimony).*

**In interacting with others, the claimant has no limitation.** *The claimant did not allege any problems in this domain. She testified that she visits with her family. She stated that she attends church on a weekly basis and visits the homeless with her sister one to two times a week. The claimant relates adequately throughout the record with no behavioral issues noted.*

**With regard to concentrating, persisting, or maintaining pace, the claimant has moderate limitation.** *The undersigned accepts that the claimant has some limitations in maintaining concentration and focus. The record shows the claimant with normal psychiatric evaluations during treatment for routine medical conditions (Exhibit 11F, 12F, 15F, and 17F). The claimant also worked since her application date as a cashier. On balance, the record supports no more than moderate limitations in this functional area given the*

*claimant's reported abilities.*

**As for adapting or managing oneself, the claimant has moderate limitation.** *The claimant reports being able to care for her own personal needs such as maintaining personal hygiene, grooming, and appropriate dress. She also independently cares for her two children. The evidence does not show that the claimant had a significant loss of her ability [to] regulate emotions, control behavior, and maintain well-being in a work setting (e.g. no findings for persistent emotional lability or significant mood fluctuations). The record does not show that the claimant had a highly supported environment or that she required significant assistance to maintain adaptive functioning. The claimant's functioning does not occur only within the scope of regimented assistance.*

***Because*** *the claimant's* **mental impairments do not cause at least two "marked" limitations or one "extreme" limitation, the "paragraph B" criteria are not satisfied.**

The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment. **The following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental functional analysis.**

The undersigned has **also considered the claimant's Intellectual Disorder under 12.05. The claimant's representative contends that listing 12.05 is [met].** ***This argument is unpersuasive as the representative has not considered the new listing criteria*** *for Intellectual Disability (12.05)*, **which** ***requires*** a. This disorder is characterized by significantly subaverage general intellectual functioning, ***significant deficits in current adaptive functioning***, and manifestation of the disorder before age 22. Signs may include, but are not limited to, poor conceptual, social, or practical

skills evident in your adaptive functioning. b. The disorder that we evaluate in this category may be described in the evidence as intellectual disability, intellectual developmental disorder, or historically used terms such as "mental retardation."

**Under the revised mental listings from January 2017, Listing 12.05 is satisfied by [] B[1]** as follows:

   **B.   Satisfied by** 1, **2[2],** and 3 (see 12.00H):
      1. Significantly subaverage general intellectual functioning evidenced by a or b:
         a. A full scale (or comparable) IQ score of 70 or below on an individually administered standardized test of general intelligence; or
         b. A full scale (or comparable) IQ score of 71-75 accompanied by a verbal or performance IQ score (or comparable part score) of 70 or below on an individually administered standardized test of general intelligence; and
      2. **Significant deficits in adaptive functioning currently manifested by extreme limitation of one, or marked limitation of two, of the following areas of mental functioning:**
         a. **Understand, remember, or apply information (see 12.00El); or**
         b. **Interact with others (see 12.00E2); or**
         c. **Concentrate, persist, or maintain pace (see 12.00E3); or**
         d. **Adapt or manage oneself (see 12.00E4);** and
      3. The evidence about your current intellectual and adaptive functioning and about the history of your disorder demonstrates or supports the conclusion that the disorder began prior to your attainment of age 22.

   . . .

   . . . [T]he **claimant does not satisfy the listing level criteria as previously discussed,** *the record does not show significant deficits in adaptive functioning*

_____

[1] In this case the "A" criteria is not at issue.
[2] In this case the plaintiff challenges aspects of Criteria 2, not 1 or 3.

*currently manifested by extreme limitation of one, or marked limitation of two in the "paragraph B["] criteria*.

Finally, the undersigned notes that **no State agency psychological consultant concluded that a mental listing is medically equaled.** Indeed, **the undersigned *considered* the State Agency ratings contained in *the mental residual functional capacity portions of the Disability Determination Services (DDS) assessments from consultants Adrian Brown, Ph.D., and Gregory Hanson, Ph.D. (Exhibit 2A and 4A).* The undersigned gives substantial weight to these opinions based on their program knowledge, their specialty in mental impairments, and that they supported their opinions with explanation.**

R. 15 to 18 (emphasis added).

Here, to meet or equal Listing 12.05, the ALJ had to find at least one extreme or two marked limitations in four broad areas of functioning. As to understanding, remembering, or applying information, the Social Security Administration Program Operations Manual System ("POMS") provides guidance in the form of examples of what might fall under this category, including

understanding and learning terms, instructions, procedures; following one- or two-step oral instructions to carry out a task . . . asking and answering questions and providing explanations.

POMS DI34001.032 – Mental Disorders – 03/24/2017, 12.00E1. The ALJ provided rationale consistent with this guidance for finding moderate limitations in this area, including that the plaintiff was able to relate her medical history to medical providers, to understand medical treatment and instructions, to take and

manage her own medications, and to independently raise her eight
children.

As to interacting with others, the POMS includes examples
such as

> cooperating with others; asking for help when needed;
> handling conflicts with others; stating own point of view;
> initiating or sustaining conversation; understanding and
> responding to social cues (physical, verbal, emotional);
> responding to requests, suggestions, criticism, correction,
> and challenges; and keeping social interactions free of
> excessive irritability, sensitivity, argumentativeness, or
> suspiciousness.

POMS DI34001.032 – Mental Disorders – 03/24/2017 at 12.00E2.

The ALJ provided rationale consistent with this guidance for
finding no limitation in this area, including that the plaintiff
did not allege any problems in this domain.  She testified that
she visits with her family, attends church on a weekly basis,
and visits the homeless with her sister one to two times a week.
She relates adequately throughout the record with no noted
behavioral issues.

As to concentrating, persisting, or maintaining pace, the
POMS includes examples such as

> initiating and performing a task that you understand and know
> how to do; working at an appropriate and consistent pace;
> completing tasks in a timely manner; ignoring or avoiding
> distractions while working; changing activities or work
> settings without being disruptive; working close to or with
> others without interrupting or distracting them; sustaining
> an ordinary routine and regular attendance at work; and
> working a full day without needing more than the allotted
> number or length of rest periods during the day.

POMS DI34001.032 – Mental Disorders – 03/24/2017 at 12.00E3.

The ALJ provided rationale consistent with this guidance for finding moderate limitations in this area, including that even with some limitations in maintaining concentration and focus, the plaintiff had normal psychiatric evaluations during treatment for routine medical conditions, and she had worked as a cashier after the filing of the application. Dr. Wossen Belachew's April 25, 2016 treatment notes reflect the plaintiff's comment that her "lawyer told her" that "continued [] work" "would not help her" with her disability claim. R. at 823. Although the plaintiff gave Dr. Belachew disability forms to fill out, she did not complete them, noting the need for further testing and noting that it was "very difficult to sort out exactly how [the plaintiff's] pain affected" her life. See R. at 823.

As to adapting or managing oneself, the POMS includes examples such as

> responding to demands; adapting to changes; managing your psychologically based symptoms; distinguishing between acceptable and unacceptable work performance; setting realistic goals; making plans for yourself independently of others; maintaining personal hygiene and attire appropriate to a work setting; and being aware of normal hazards and taking appropriate precautions.

POMS DI34001.032 – Mental Disorders – 03/24/2017 at 12.00E4.

The ALJ provided rationale consistent with this guidance for finding moderate limitations in this area, including that the

plaintiff was able to care for her and her two youngest children's personal needs without evidence of persistent emotional lability, significant mood fluctuations, or the need for regimented assistance.

Based on the foregoing, the court finds that the ALJ evaluated and provided a rationale and substantial evidence for concluding that the plaintiff's intellectual functioning did not meet or equal Listing 12.05.

Also, the court disagrees with the plaintiff's assertion that it is unclear which opinions supported the ALJ's findings. The ALJ's opinion reflects consideration of the medical opinions of state agency consultants Adrian Brown, Ph.D. on initial review and Gregory Hanson, Ph.D. on reconsideration. The ALJ cited supporting exhibits, which include treating physician Wossen Belachew's opinion that the claimant had "no psychological symptoms". R. at 779, 819. The plaintiff did not challenge the substance of any of these opinions and failed to demonstrate the legal significance of the challenged lack of clarity.

### 2. *Need for Additional Examination, Testing and Medical Source Statement*

As to considering the need for a consultative mental health examination with psychological testing and a medical source statement, the plaintiff acknowledged that this was not

*required*; rather, it was *suggested*.  See Pl.'s Mem. at 11.  The record is considered complete when there is sufficient evidence "to make a determination or decision about whether" the plaintiff is "disabled . . . ."  20 C.F.R. § 416.912(a)(2); 20 C.F.R. § 416.920b(b)("We consider evidence to be insufficient when it does not contain all the information we need to make our determination . . . .")

The court finds that an additional examination, testing, and an updated medical source statement were unwarranted in this case.  The challenged aspects of the ALJ's opinion are supported by substantial evidence and the plaintiff fails to demonstrate prejudice on this issue, making remand for this reason inappropriate.

**B.    Medical Opinions**

The Social Security regulations provide guidance as to how to weigh medical opinions:

(c) How we weigh medical opinions. Regardless of its source, we will evaluate every medical opinion we receive. **Unless we give a treating source's medical opinion controlling weight** under paragraph (c)(2) of this section, **we consider all of the following factors in deciding the weight we give to any medical opinion.**

**(1) Examining relationship.** Generally, we give more weight to the medical opinion of a source who has examined you than to the medical opinion of a medical source who has not examined you.

**(2) Treatment relationship.** Generally, we give more weight to medical opinions from your treating sources, since these sources are likely to be the medical

13

professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's medical opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight. **When we do not give the treating source's medical opinion controlling weight, we apply the factors** listed in paragraphs **(c)(2)(i) and (c)(2)(ii)** of this section, as well as the factors in paragraphs **(c)(3) through (c)(6)** of this section in determining the weight to give the medical opinion. We will always give good reasons in our notice of determination or decision for the weight we give your treating source's medical opinion.

**(i) Length of the treatment relationship and the frequency of examination**. Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion. When the treating source has seen you a number of times and **long enough to have obtained a longitudinal picture of your impairment**, we will give the medical source's medical opinion more weight than we would give it if it were from a nontreating source.

**(ii) Nature and extent of the treatment relationship**. Generally, the more knowledge a treating source has about your impairment(s) the more weight we will give to the source's medical opinion. We will look at the treatment the source has provided and at the kinds and extent of examinations and testing the source has performed or ordered from specialists and independent laboratories. For example, if your ophthalmologist notices that you have complained of neck pain during your eye examinations, we will consider his or her medical opinion with respect to your neck pain, but we will give it less weight than that of another physician who has treated you for the neck pain. When the treating source **has reasonable knowledge of your impairment(s)**,

we will give the source's medical opinion more weight than we would give it if it were from a nontreating source.

**(3) Supportability.** The more a medical source presents **relevant evidence to support** a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion. The **better** an **explanation** a source provides for a medical opinion, the more weight we will give that medical opinion. Furthermore, because **nonexamining sources** have no examining or treating relationship with you, **the weight we will give their medical opinions will depend on the degree to which they provide supporting explanations** for their medical opinions. **We will evaluate the degree to which these medical opinions consider all of the pertinent evidence** in your claim, **including medical opinions of treating and other examining sources.**

**(4) Consistency.** Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion.

**(5) Specialization.** We generally give more weight to the medical opinion of a specialist about medical issues related to his or her area of specialty than to the medical opinion of a source who is not a specialist.

**(6) Other factors.** When we consider how much weight to give to a medical opinion, we will also consider any factors you or others bring to our attention, or of which we are aware, which tend to support or contradict the medical opinion. For example, **the amount of understanding of our disability programs and their evidentiary requirements** that a medical source has, regardless of the source of that understanding, **and the extent to which a medical source is familiar with the other information in your case record** are relevant factors that we will consider in deciding the weight to give to a medical opinion.

20 .F.R. § 416.927 (c)(1)-(6)(emphasis added).

### 1. *Treating Sources*

As to treating sources, the plaintiff asserts that the ALJ erred by according only minimal weight to the opinions of treating internists Silvi Simon, M.D., and Kirsten Hohmann, M.D., because they were the only examining sources with opinions as to the plaintiff's physical limitations; and also erred because "the ALJ's decision is void of consideration" of the 20 C.F.R. § 416.927 factors. See Pl.'s Mem. at 13.

A treating physician's opinion "as to the nature and severity of the impairment is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" Burgess v. Astrue, 537 F.3d 117, 128 (2d Cir. 2008) (quoting 20 C.F.R. § 404.1527(c)(2)); 20 C.F.R. § 416.927(c)(2).

When the ALJ does not give a treating physician's opinion controlling weight, "the ALJ may still assign some weight to those views, and must specifically explain the weight that is actually given to the opinion." Schrack v. Astrue, 608 F. Supp. 2d 297, 301 (D. Conn. 2009) (citing Schupp v. Barnhart, No. Civ. 3:02CV103 (WWE), 2004 WL 1660579, at *9 (D. Conn. Mar. 12, 2004)). It is "within the province of the ALJ to credit portions of a treating physician's report while declining to accept other portions of the same report, where the record

contained conflicting opinions on the same medical condition."
Pavia v. Colvin, No. 6:14-cv-06379 (MAT), 2015 WL 4644537, at *4
(W.D.N.Y. Aug. 4, 2015) (citing Veino v. Barnhart, 312 F.3d 578,
588 (2d Cir. 2002)). "[G]ood reasons" are required for not
giving a treating physician's opinion controlling weight. See
Snell v. Apfel, 177 F.3d 128, 133-34 (2d Cir. 1999)(citing
Schaal, 134 F.3d at 505). **"Good reasons" include that "'the
treating physician['s] opinions [are in]consistent with** other
substantial evidence in the record, such as the **opinions of
other medical experts**.'" Camille v. Colvin, 652 F. App'x. 25,
27 (2d Cir. 2016) (quoting Halloran v. Barnhart, 362 F.3d 28, 32
(2d Cir. 2004) (per curiam) (citation omitted)(emphasis added).
See also Mariani v. Colvin, 567 F. App'x 8, 10 (2d Cir. 2014)
("A treating physician's opinion need not be given controlling
weight where it . . . is not consistent with the opinions of
other medical experts" where those other opinions amount to
"substantial evidence to **undermine the opinion of the treating
physician**")(emphasis added).

The ALJ "does not have to state on the record every reason
justifying a decision", Brault v. Social Sec. Admin., Comm'r,
683 F.3d 443, 448 (2d Cir. 2012), nor "recite every piece of
evidence that contributed to the decision, so long as the record
'permits us to glean the rationale . . . .'" Cichocki v.
Astrue, 729 F.3d 172, fn. 3 (2nd Cir. 2013) (citing Mongeur v.

<u>Heckler</u>, 722 F.2d 1033, 1040 (1983)).

The relevant part of the ALJ's opinion reads:

The claimant's treating physician, Silvi Simon, MD., provided a disability questionnaire and opined that the claimant was limited to the light exertion, with the ability to sit and walk up to one hour, with the need to change positions (Exhibit 8F and 9F). The undersigned gives this opinion minimal weight because the opinion expressed is quite **conclusory, providing very little explanation** of the evidence that was relied upon in forming that opinion. The opinion is **also limited in duration** due to the claimant's **infrequent visits and gaps in treatment. More weight is given to the longitudinal treatment notes showing minimal treatment with noted improvement from conservative measures (Exhibit 10F and 11F).** The undersigned further notes that this opinion is **inconsistent with the claimant's self-reports of her varied and robust activities of daily living, which include being a single mom to two young school aged children.**

The claimant's treating primary care provider, Kirsten Hohmann, M.D., provided a medical source statement dated May 18, 2016, that provided for a less than sedentary residual functional capacity since February 2016 (Exhibit 14F). The undersigned assigns this opinion minimal weight. Although Dr. Hohmann is a treating provider, the **duration and frequency of the claimant's visits with noted extended gaps in treatment** detracts from Dr. Hohmann's assessment. Moreover, the less than sedentary assessment [is] **inconsistent with treatment notes showing the claimant with normal physical examinations, effectiveness of medications, and treatment notes showing no physical disability (Exhibit 10F, 11F, 12F/5, 13F, 15F/13-14, 17F, and 18F).** Indeed, in **treatment notes from April 2016, the provider did not complete the disability form and further noted that the claimant had not been working since December and advised that her lawyer told her that it would not help her disability case, if she continued to work (Exhibit 15F/14).**

R. 23-24 (emphasis added).

18

Here, the ALJ was not required to assign controlling weight to the opinions of Drs. Simon and Hohmann simply because they were the only examining sources with opinions as to the plaintiff's physical limitations. Rather, the ALJ was required to give good reasons for assigning less than controlling weight.

As to Dr. Simon, the ALJ found that the opinion was not well-supported (conclusory, very little explanation of supporting evidence and of limited duration (infrequent visits and treatment gaps)) nor consistent with substantial evidence (longitudinal treatment notes showing improvement with minimal treatment and conservative measures and self-reports of varied and robust activities of daily living, including independently raising two young, school-aged children).

As to Dr. Hohmann, the ALJ found that the opinion was not consistent with substantial evidence (duration and frequency of visits with extended gaps in treatment; treatment notes showing normal physical examinations, effectiveness of medications and no physical disability; treatment notes revealing that plaintiff had worked but was no longer working, that she mentioned that her lawyer had advised that continued work would not help her

disability claim, and that she gave her doctor disability forms which were not completed).

These treating physician opinions were also inconsistent with the opinions of state agency consultants Firooz Golkar, M.D. (finding plaintiff able to sit and walk up to 6 hours with normal breaks (R. at 195)) and Anselmo Mamaril, M.D. (finding plaintiff able to sit and walk up to 6 hours with normal breaks (R. at 210) and capable of light duty (R. at 215)), which were given substantial weight.

While "all of the factors cited in the regulations" must be considered to avoid legal error, Schaal v. Apfel 134 F.3d 496, 504 (2d Cir. 1998), "slavish recitation of each and every factor" is not required "where the ALJ's reasoning and adherence to the regulation are clear", Atwater v. Astrue, 512 Fed.App'x. 67, 70 (2013) (citing Halloran v. Barnhart, 362 F.3d 28, 31- 32 (2d Cir.2004) (per curiam)).

As to Dr. Simon, the ALJ considered the length (limited in duration), the nature and extent of the treatment relationship (infrequent visits, gaps in treatment), supportability (conclusory, very little explanation), and consistency (inconsistent with noted improvement from minimal and conservative treatment, self-

reports of varied and robust activities of daily living,
including independently raising two young, school-aged
children).

As to Dr. Hohmann, the ALJ considered the length
(noted duration and frequency of the visits with extended
gaps in treatment), supportability and consistency
(inconsistent with treatment notes showing normal physical
examinations, effectiveness of medications, no physical
disability), and other factors (doctor did not complete
disability form, noted that the plaintiff had been working
and advised by her lawyer that continuing to work would be
unhelpful for disability claim purposes).

Thus, the ALJ's rationale for not giving these
treating physician's opinions controlling weight can be
gleaned from the ALJ's opinion, these respective
conclusions are supported by substantial evidence, and the
plaintiff failed to demonstrate how these alleged
deficiencies harmed her.  Remand for these reasons would
be inappropriate.

### 2. *Non-treating Source*

As to non-treating sources, the plaintiff asserts that the
ALJ erred by according the opinion of Jeffrey S. Cohen, Ph.D.,
minimal weight.

"Administrative law judges . . . will consider . . . medical findings and medical evidence from [] Federal or State agency . . . psychological consultants . . . according to . . . 416.927 . . . because [they] are highly qualified and experts in Social Security disability evaluation." 20 C.F.R. § 416.913a(b)(1). Section 416.927 notes that an examining medical source is considered a nontreating source if the "relationship with the source is not based on [] medical need for treatment or evaluation, but solely on [the] need to obtain a report in support of [a] claim for disability." 20 C.F.R. § 416.927.

Dr. Cohen is a consultative psychological examiner who evaluated the plaintiff for the sole purpose of a disability determination and is considered a non-treating source for purposes of the Social Security Act.

The relevant part of the ALJ's opinion reads:

The claimant presented to Jeffrey S. Cohen on August 28, 2012, for a consultative examination at the request of the Disability Determination Services (DDS).(Exhibit 6F). The claimant presented as casually attired, coherent, and cooperative. She reported that she had eight children, but only the two youngest lived with her, ages seven and five years old. She reported struggling with math and reading. She reported that she was molested when she was about eight or nine years old. Dr. Cohen remarked that the claimant had some problems with concentration and attention. He noted that the claimant had problems in analytical reasoning and verbal abstraction, with limited cognitive abilities. Based on the one-time evaluation with intellectual testing, the

claimant achieved a full scale IQ of 63, which placed her in the mild mental retardation range (Exhibit 6F). Dr. Cohen further assessed the claimant with Dysthymic Disorder and posttraumatic stress disorder (Exhibit 6F/8).

**The claimant did not allege any mental health conditions at the hearing. Further, there is no evidence of any mental health treatment since the claimant's application date. Moreover, the claimant's mental status examinations were noted to be normal throughout her treatment (Exhibit 11F, 12F, 15F, and 12F).** Based upon the evidence of record, the claimant's **adaptive behaviors are adequate** for vocational involvement and the undersigned finds the record does not show evidence to support greater restrictions than provided for in the decisional residual functional capacity.

Despite the claimant's reported pain complaints, she is able to perform a wide range of activities of daily living. At one point or another in the record, **either in forms completed in connection with the application and appeal, in medical reports or records, or in the claimant's testimony, the claimant has reported performing a wide range of independent activities of daily living**. In August 2012, she reported caring for her two young children, at the time, ages five and seven years old, as a single mother. (Exhibits 6F and 10F/3). The claimant testified that she continues to care for her children, now ages ni[n]e and 12 years old, which indicates **she has not had any problems caring for her children as a single mother. She stated that she was independent in her own self-care and medication management. In addition, she testified that she was involved in their school activities and she has volunteered for school activities with the PTO. She testified that she takes her children to the park, attends church services, and visits the homeless one to two times a week with her sister. The claimant also reported performing household chores, such as cooking, cleaning, doing laundry and going grocery shopping. Despite complaints of difficulty**

**walking and pain in her lower extremity, the claimant reported that she "walks a lot" (Exhibit 5F/4) and she "walks everywhere" (Exhibit 5F/14).** Also, as discussed in Finding 1, **the record reflects work activity after the claimant's application date.** Although that work activity did not constitute disqualifying substantial gainful activity, the claimant's ability to participate in such activities does not support her allegations of disabling symptoms and functional limitations to the extent asserted. These self-described activities indicate the claimant functions at a higher level physically, psychologically, and even cognitively than alleged. The claimant has been prescribed and has taken appropriate medications for the alleged impairments, which weighs in the claimant's favor, but the medical records reveal that the **medications have been relatively effective in controlling the claimant's symptoms** without any reported sided effects. As an initial matter, the record shows evidence of the claimant not filling her prescriptions (Exhibit 12F/6). This was noted in treatment notes from June 2014; however, the claimant was noted to be on Husky State insurance. Moreover, in treatment notes, the claimant reported that her medications were helpful. As of August 2012, she reported that her right leg pain was improved with Advil (Exhibit 4F, 5F and 7F/12). The claimant also reported that her medications of Lyrica and Gabapentin were helpful (Exhibit 15F/20 and 17F/5). In May 2016, she reported that Gabapenti[]n provided a complete resolution of her pain (Exhibit 15F/1). The claimant did report some sleepiness with her medications (Exhibit 15F/14).

Likewise, the claimant has been prescribed **and followed appropriate treatment for the alleged impairments**, which weighs in her favor, but the medical records reveal that the conservative treatment has been relatively effective in controlling the claimant's symptoms. While the claimant initially reported that physical therapy did not help (Exhibit 15F/14), treatment notes in September 2012 reveal that the

claimant had physical therapy twice per week and her
pain was improving (Exhibit 10F/74 and 11F/74). However,
the physical therapy was discontinued on October 2,
2012, due to the claimant's noncompliance with
attendance after just three visits (Exhibit 10F/74). As
of June 2017, the claimant reported that her pain
improved after attending physical therapy (Exhibit
18F/3).

. . .

. . . [T]he undersigned considered the findings from
Dr. Cohen and assigns them minimal weight (Exhibit 6F).
Indeed, the opinion is based upon a **one-time evaluation**
and is **unsupported by treatment notes for physical
conditions, showing the claimant with normal mental
status examinations** (Exhibit 11F, 12F, 15F, and 17F).
No weight is given to Dr. Cohen's notations regarding
physical conditions, as these are outside his area of
expertise. As to his **significant mental findings, they
are unsupported by the claimant's varied and robust
activities of daily living, which include being a
single mom to two young school aged children.**

R. 21-24 (emphasis added).

Here, the court is able to glean the rationale for the
ALJ assigning minimal weight to Dr. Cohen's opinion.  Dr.
Cohen met with the plaintiff once, specifically for purposes
of a psychiatric examination to determine disability.  He is
an expert in psychiatric examinations for disability
determinations but not as to physical limitations. His
opinion was inconsistent with other substantial evidence
including the opinions of other medical sources, medical
records, and the plaintiff's own testimony.  The claimant did
not allege any mental health conditions, and mental status
examinations were noted as normal throughout her treatment.

There is no evidence of mental health treatment since the application.  Forms completed in connection with the application and the appeal, medical reports or records, and the plaintiff's own testimony support her participation in varied and robust activities of daily living.  The plaintiff testified that she walked a lot.  She worked after the application.  The record reveals that she was able to understand and follow treatment and that medications and conservative treatments effectively controlled her symptoms.  Dr. Cohen did examine the plaintiff but he did not consider all of the evidence of record.

The court finds no legal error here.  The ALJ supported assigning minimal weight to Dr. Cohen's opinion with substantial evidence.  Absent legal error, the court may not set the ALJ's decision aside, even where the plaintiff claims that substantial evidence also supports the opposite conclusion.  Remand for this reason is also inappropriate.

### 3. *Non-Examining Sources*

As to non-examining sources, the plaintiff asserts that the ALJ erred by according substantial weight to the September 27, 2012 opinion of Firooz Golkar, M.D., on initial review and the March 26, 2013 opinion of Anselmo Mamaril, M.D., on reconsideration because they did not consider the criteria of

Listing 12.05 that was in effect on March 24, 2017, and they did not review the entire record.

The regulations note that the weight given to non-examining sources

> will depend on the degree to which they provide supporting explanations for their medical opinions [and] . . . . the degree to which these medical opinions consider all of the pertinent evidence . . . , including medical opinions of treating and other examining sources.

20 C.F.R. § 416.927 (c)(3).

The relevant part of the ALJ's opinion reads:

> [T]he undersigned considered the State agency physical residual functional capacity assessments from Firooz Golkar, M.D, at the initial level, and Anselmo Mamaril, M.D., upon reconsideration, which support a light residual functional capacity and assigns them substantial weight (Exhibit 2Aand 4A). The State agency medical consultants are experts in social security disability evaluation. They are also familiar with our disability programs and their evidentiary requirements, including formulating physical residual functional capacity assessments. Here, they supported their determinations with persuasive rationale based on specific evidence of record, particularly the medical signs and laboratory findings and the opinions of treating and examining sources made available to them. The claimant did submit additional evidence at the hearing level, but that evidence does not contradict the findings of the State agency medical consultants. This is especially true given the treatment notes show[] gaps in treatment with the claimant's conditions listed as improved with physical therapy and medications (Exhibit 15F and 18F).

R. 23.

As with the plaintiff's other challenges, the court is able to glean the ALJ's rationale for according substantial weight to the opinions of the non-examining sources.  The opinions were supported by a persuasive rationale that was based on specific evidence, medical signs, laboratory findings and the opinions of treating and examining sources.  There were gaps in treatment and noted improvement with physical therapy and medications.  The consultants were experts in Social Security evaluation and familiar with the disability program and its evidentiary requirements, including RFCs.  The ALJ noted that any additional unconsidered evidence did not contradict the consultants' findings.  As noted by the defendant, the consultants' opinions were substantially based on the plaintiff's significant adaptive functioning.  See e.g. Exhibit 2A at 194-96 and 4A at 206-07.

The plaintiff also argues that the ALJ failed "to incorporate all of Ms. Powell's limitations into the RFC", citing the findings of Gregory Hanson, Ph.D. and Adrian Brown, Ph.D.: moderate limitations in the plaintiff's ability to interact appropriately in public, to get along with coworkers or peers, to complete a normal workday and workweek without interruptions from psychologically based symptoms, to perform at a consistent pace without an unreasonable number and length of rest periods, and to set realistic goals or make plans independently of others.  See Pl.'s Mem. at 10-11.

As to both Dr. Hanson and Dr. Brown, the plaintiff fails to demonstrate how the alleged deficiencies harmed the plaintiff, given that the version of Listing 12.05 in affect at the time of the decision required at least one extreme or two marked limitations.

The court finds that remand for this reason also is inappropriate.

## III. Conclusion

For the reasons set forth above, the Defendant's Motion for an Order Affirming the Decision of the Commissioner (EFC No. 30) is hereby GRANTED, and the plaintiff's motion for reversal or remand of the Commissioner's decision (ECF No. 24) is hereby DENIED.

The Clerk shall enter Judgment accordingly and close this case.

It is so ordered.

Dated this 23rd day of March 2020, at Hartford, Connecticut.

__        /s/AWT  __  ____

Alvin W. Thompson
United States District Judge
